# BORRELLI & ASSOCIATES

## P.L.L.C.

www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 910 Franklin Avenue |
| Suite 1821 | Suite 200 |
| New York, NY 10017 | Garden City, NY 11530 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

July 31, 2019

*Via ECF*
The Honorable Valerie E. Caproni
United States District Judge for the
Southern District of New York
40 Foley Square
New York, New York 10007

> Re:    *Santana v. Caridad International Restaurant, Inc., et al.*
> *Docket No.: 17-CV-07690-VEC*

Dear Judge Caproni:

This firm represents Plaintiff Wendy Santana in the above-referenced single-plaintiff wage and hour action brought under, *inter alia*, the Fair Labor Standards Act ("FLSA"), against her former employers, Caridad International Restaurant, Inc. ("Caridad"), 230 Broadway Restaurant Corp. ("230 Broadway"), Leo Ramirez, and Jeannette Castillo (collectively as "Defendants").  We submit this letter, on behalf of the Parties, to respectfully request that the Court review and approve the Parties' settlement of Plaintiff's claims brought pursuant to the FLSA as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), pursuant to the Court's Order dated July 18, 2019. *See* Dkt. No. 47.  A copy of the Parties' fully-executed settlement agreement is attached hereto as **Exhibit A**.[1]

---

[1] Plaintiff also brings claims in this case for Defendants' alleged violations of the New York Labor Law, which although resolved in the Parties' settlement agreement, do not require court approval for dismissal. *E.g. Simono v. Gemco Realty II, LLC*, No. 16-cv-5385-AJN, Dkt. No. 32 (S.D.N.Y. Oct. 23, 2017) (citing *Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016)).

I.     **PRELIMINARY STATEMENT**

On October 9, 2017, Plaintiff filed a Complaint in this court against Defendants - - two corporations that consecutively operated a single restaurant and bar and two of their shareholders and managers - - alleging that, *inter alia*, they failed to pay her overtime compensation pursuant to, *inter alia*, the FLSA. *See* Dkt. No. 1, ¶ 2.  Specifically, in her Complaint, Plaintiff alleged that she worked for Defendants as a cook from in or about January 2007 until in or about May 2015, and then again as a chef and non-exempt "manager" from April 2016 until June 18, 2017. *See* Dkt. No. 1, ¶ 2.  Plaintiff further alleged that she routinely worked over forty hours each week, but Defendants failed to compensate her at the statutorily-applicable overtime rate for the hours that she worked each week exceeding forty, and instead paid her a flat daily wage for each day worked regardless of the amount of hours worked in a day or week.

Defendants filed an Answer on November 5, 2017, denying all of Plaintiff's material allegations. *See* Dkt. No. 15.  On December 29, 2017, the Court so-ordered the parties' stipulation to conditional certification of a collective action pursuant to 29 U.S.C. § 216(b). *See* Dkt. No. 20.  On February 12, 2018, pursuant to the Court's Order, Plaintiff sent notices to twenty-seven putative members of the collective.  On April 12, 2018, at Plaintiff's request due to sixteen of the twenty-seven notices being returned as undeliverable, the Court entered an Order directing Defendants to produce the social security numbers that it possessed for the putative members who did not receive notice, and additionally extended the opt-in deadline for those sixteen individuals until June 29, 2018. *See* Dkt. No. 25.  On June 22, 2018, the parties requested that the Court refer the matter to mediation with a member of the Southern District's panel, which the Court granted on June 25, 2018. *See* Dkt. Nos. 31-32.

On November 8, 2018, the parties participated in mediation with a member of the Southern District's panel, Roger Briton, Esq. of Jackson Lewis, who specializes in employment defense.  Although Plaintiff provided both the mediator and Defendants with damage calculations, the mediation largely focused on Defendants' inability to withstand a significant judgment, rather than the merits of the action or the damage calculations. While Defendants made an offer based upon their inability to pay, Plaintiff requested that Defendants provide financial records in order to be able to appropriately assess Defendants' offer.  While Defendants requested fourteen days to provide the records, Defendants failed to do so and the mediator entered his report of an unsuccessful mediation on January 9, 2019. *See* Dkt. No. 33.

On February 8, 2019, the Court held an initial conference and entered a Civil Case Management Plan and Scheduling Order on February 9, 2019. *See* Dkt. No. 56.  As

thoroughly detailed in Plaintiff's June 12, 2019 letter (*see* Dkt. No. 39), after the production and our assessment of Defendants' financial records, the parties ultimately settled the matter for $10,000 to be paid over the course of twelve months. On May 14, 2019, the parties advised the Court of their settlement, and the Court entered an order on May 16, 2019, directing the parties to file their motion for settlement approval by no later than June 17, 2019. *See* Dkt. No. 38. Subsequently, Plaintiff's counsel drafted a settlement agreement and provided it to Defendants' counsel for review, but to date, as also detailed in our prior letter, we have not heard from Defendants' counsel. Thus, on June 12, 2019, we requested that the Court conduct an in-person fairness hearing so that the parties could place the terms of their settlement and request approval on the record. *See* Dkt. No. 39. Also in that letter we provided ample law on why the parties' agreement is enforceable even absent a written settlement agreement. On June 13, 2019, the Court entered an Order directing Defendants to respond to Plaintiff's June 12 letter requesting a fairness hearing. After Defendants failed to do so, on July 10, 2019, the Court entered an Order, *inter alia*, directing Plaintiff to file a letter with the Court by July 17, 2019, explaining why the settlement is fair and reasonable, and additionally explaining what fee Plaintiff's counsel intends to take and why that fee is reasonable as well. *See* Dkt. No. 41.

On July 16, 2019, Defendants submitted a letter to the Court stating, *inter alia*, that they were in the process of reaching their client to obtain an executed settlement agreement. *See* Dkt. No. 44. On July 19, 2019, after requesting a two-day extension, Plaintiff submitted a letter seeking approval and enforcement of the Parties' settlement pursuant to *Cheeks*, in accordance with the Court's July 10 Order. *See* Dkt. No. 46. On that same date, the Court entered an Order directing the Parties to file a joint fairness letter, along with a fully-executed settlement agreement, by August 1, 2019. *See* Dkt. No. 47. The Parties subsequently finalized a settlement agreement, which again, is attached as **Exhibit A.**

Notably, while the settlement agreement represents that out of the $833.33 monthly payments made by Defendants, $472.07 will be apportioned to Plaintiff and $361.26 will be apportioned to Plaintiff's counsel for fees and costs, as represented in Plaintiff's July 19 letter, Plaintiff's counsel has reduced the fee that it is seeking approval for. Indeed, in light of the low settlement amount, Plaintiff's counsel reduced its fee request from one-third to one-quarter of the total settlement amount. Accordingly, Plaintiff's counsel is requesting in this letter that the Court approve a monthly payment of $833.33 for ten months, with $499.78 to be apportioned to Plaintiff and $333.55 to be apportioned to Plaintiff's counsel for fees and costs, explained in further detail below. Given the demonstrated trouble that Defendants' counsel has had having their client execute the Agreement, the Parties believed that the simplest way to accomplish this is for Plaintiff's counsel to make this representation and request for approval in this letter.

Additionally, the agreement states that if Defendants default as to any payment, after giving notice and an opportunity to cure, 200% of the unpaid balance shall become due and owing, and Plaintiff may apply to the Court to enter judgment for this amount, plus attorneys' fees and expenses associated with the application. As described below, the Parties submit that the settlement agreement represents a fair and reasonable resolution of Plaintiff's FLSA claims in the matter under the circumstances. Thus, the Parties respectfully request that the Court approve their settlement agreement and dismiss this action with prejudice.

## II.   THE SETTLEMENT IS FAIR AND REASONABLE TO PLAINTIFF

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. When analyzing a Rule 41 FLSA settlement, courts approve them "when they are reached as a result of contested litigation to resolve bona fide disputes." *Flores v. Hill Country Chicken NY, LLC*, 2018 WL 2389076, at *2 (S.D.N.Y. May 25, 2018) (citing *Johnson v. Brennan*, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011)). "Generally, there is a strong presumption in favor of finding a settlement fair, because the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Qi Jun Kang v. Jia Xing 39th Inc.*, 2018 WL 4538906, at *1 (S.D.N.Y. Sept. 21, 2018) (citing *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Chowdhury v. Brioni Am., Inc.*, 2017 WL 5953171, at *2 (S.D.N.Y. Nov. 29, 2017) (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013)). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.*

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). *See Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *1 (S.D.N.Y. Feb. 3, 2016) (Sullivan, *J.*) (applying *Wolinsky* factors). The *Wolinsky* factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id.* (citing *Wolinsky*, 900 F. Supp. 2d at 335).

A.      *Range of Possible Recovery*

In this case, during her fist employment period, which for the relevant time period of this action when factoring in New York Labor Law claims spanned from October 6, 2011 through May 2015, Plaintiff worked as a cook six days per week, from 6:00 a.m. until at least 4:00 p.m. each day, without an interrupted break.  For her sixty hours worked per week, Defendants paid her $120.00 per day, but never paid her at the required overtime rate of pay for the twenty hours of overtime that Plaintiff worked each week.  Then, for the second period of employment that spanned from April 2016 until June 18, 2017, Plaintiff worked six days per week for a total of approximately sixty-six hours per week.  During this second period, Plaintiff claimed based on her memory that she received $150.00 per day on Tuesdays through Saturdays, and $300.00 per day on Sundays, but again did not get paid an overtime premium for the hours that she worked over forty in a week.

Prior to the mediation, Defendants provided time records for Plaintiff's second employment period.  These time records showed that Plaintiff was paid an hourly rate of $15.00 per hour for her first forty hours and $22.50 for the hours that she worked over forty in a week.  The records additionally showed that she was paid properly according to these rates in cash and that she signed every week attesting to the fact that she received the appropriate amount.  Plaintiff agreed that these records are accurate.

Accordingly, at the mediation and thereafter, while Defendants argued that they lawfully paid Plaintiff during her second period of employment, Defendants conceded that they had no credible defense for Plaintiff's first period of employment.  Thus, for the relevant FLSA period dating back three years from the filing of her Complaint and opt-in form on October 9, 2017, Plaintiff's best day at trial for her FLSA claims is represented as follows:

| Weeks Worked Within FLSA Statute of Limitations | Hours Per Week Based Upon Plaintiff's Allegations | Maximum Actual Plus Liquidated Recovery | Net Settlement Amount to be Received | Recovery Percentage |
|---|---|---|---|---|
| 33 | 60 | $11,982.86 | $5,997.35 | 60% |

Based on the circumstances of this case, which will be explained in further detail below, this settlement is both fair and reasonable considering the possible range of recovery.  *See Castillo*, 2018 WL 7681356, at *2 (finding that plaintiff's recovery is reasonable where it is more than fifty percent of what plaintiff alleged he was owed).  This

is especially true because "FLSA claims have a two-year statute of limitations, unless the violation was willful, which extends the limitations period to three years." *Garcia v. Bad Horse Pizza, Inc.*, 2017 WL 192955, at *2 (S.D.N.Y. Jan. 18, 2017) (citing 29 U.S.C. § 255(a)). Additionally, "if the employer shows to the satisfaction of the Court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA, the court may, in its sound discretion, award no liquidated damages." *See id.* at *3-4 (finding that plaintiff failed to demonstrate that defendant willfully violated the FLSA, but defendant failed to produce any evidence that it took steps to learn the requirements of the FLSA and comply with them). Thus, if Plaintiff were unable to establish willfulness, or if the Defendants produced evidence of good faith, Plaintiff's FLSA recovery could be significantly less than what she is receiving as a result of this settlement, and could actually be zero if Plaintiff failed to establish willfulness, something that is more than theoretical in light of Defendants beginning to track Plaintiff's hours during her second employment period after, presumably, learning about the law's requirements. Therefore, the result ultimately achieved for Plaintiff represents a fair and reasonable recovery in light of her best FLSA result. This factor favors approval.

### B. *Avoidance of Burdens and Expenses*

Second, settling at this stage obviously allows Plaintiff to avoid substantial costs and delays. Indeed, should the Court not approve the settlement, in light of Defendants' counsel's representations made on July 16, 2019 (*see* Dkt. No. 44) that they have experienced repeated difficulty contacting their client, it is likely that Plaintiff would have to move for discovery-related sanctions and an eventual default in the not-to-distant future, file lengthy briefs, and then attempt to collect, which is a lengthy and labor-intensive process in all respects. Alternatively, assuming that Defendants were to actively defend themselves in the litigation, the parties would then be obligated to exchange formal document discovery, conduct depositions of all parties and pertinent non-parties, and most likely engage in motion practice. The parties would then likely proceed to a trial in this matter, followed by post-trial motions and a potential appeal, resulting in a delayed resolution of Plaintiff's claims at potentially great expense. At this point in the action, there have not been substantial out-of-pocket litigation expenses incurred, but post-depositions, the costs would naturally balloon. This settlement eliminates those costs and delays assuming that Defendants voluntarily pay, and even if they do not, the Court can simply enter judgment at that point for the amount owed under its inherent authority without need for lengthy default briefing. *See Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015). This clearly weighs in favor of approval.

C.    *Litigation Risks*

Third, of course, all parties face the risk of losing at trial, either in whole or in part. Here, even if Plaintiff were to succeed on liability, there are four risks that could serve to either minimize or eliminate her recovery: (1) failure to prove that Plaintiff worked the hours that she alleged; (2) failure to prove willful violations of the FLSA; (3) Defendants reasonably could show that they made a good faith effort to comply with the statute; and (4) Defendants' inability to withstand a greater judgment, or any judgment at all, in light of their financial condition.

The fourth factor concerning Defendants' financial condition deserves the most attention. Indeed, Defendants did little in this case from its outset other than take the position that they would not be able to pay out any significant amount in either a settlement or in the event of a judgment. To that end, Plaintiff's research revealed that Defendants Caridad and Ramirez both had significant judgments against them. One of these judgments is based upon a similar case filed against both Defendants captioned *Contreras et al. v. Parrilla Latina Restaurant, Inc. et al.*, 13-cv-7631-AJP (S.D.N.Y. Apr. 18, 2014) (judgment in the amount of $200,000). Additionally, financial records produced on behalf of Defendants 230 Broadway and Castillo showed that continued litigation would most likely end up with an uncollectable judgment and possible bankruptcy. Based on Plaintiff's research and Defendants' production of financial records, a settlement where Plaintiff received some compensation for her claims, assuming that Defendants pay, is likely her only real opportunity to recover anything at all. Indeed, courts have recognized that eventual trial practice may "meaningfully decrease possible recovery for plaintiffs." *Flores v. Mama Lombardi's of Holdbrook, Inc.*, 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015).

Considering these attendant risks, the settlement amount here heavily weighs in favor of a fair and reasonable result that warrants this Court's approval.

D.    *Arms-Length Bargaining, No Fraud or Collusion, No Cheeks Admonitions*

As to whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the FLSA claims, the settlement negotiations took place over several months and only after damage calculations and financial information had been exchanged. "Typically, courts regard the adversarial nature of a litigated FLA case to be an adequate indicator of the fairness of the settlement." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (citation omitted). There was arms-length bargaining and not a semblance of fraud or collusion in this case.

Moreover, the settlement agreement does not contain any terms that would militate against the Court approving it.  For instance, Plaintiff's release in paragraph 1 of the Settlement Agreement is limited solely to any wage and hour claims that Plaintiff has or may have against Defendants, and does not fall into the category of releases that are so broad and encompassing so as to be rejected because they run afoul of standards of fairness and reasonableness.  *See Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015).  To the contrary, this release is narrowly tailored to release only claims relevant to the instant action.  Likewise, the agreement does not contain a confidentiality clause that unduly restricts Plaintiff's ability to discuss the settlement, or a non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez,* 2015 WL 1455689, at *5); *Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *3 (S.D.N.Y. Jun. 10, 2016) ("While not every non-disparagement clause in an FLSA settlement is *per se* objectionable, a clause which bars a plaintiff from making negative statements about a defendant must include a carve-out for truthful statements about a plaintiff's experience in litigating his case.").

In sum, considering the risks and potential costs and resources that would be expended in further litigation in this case, including as outlined above, the Parties maintain that this settlement is a satisfactory result for Plaintiff, and request that the Court approve and enforce it as fair and reasonable.  Moreover, the Parties request that the Court retain jurisdiction over this matter to enforce its Order and to enter judgment in accordance therewith should it become necessary, something that seems possible, if not likely, given the history of this case.

## III.    <u>Attorneys' Fees and Costs are also Reasonable</u>

Plaintiff's counsel seeks a total of $4,002.65 for attorneys' fees and costs to be distributed pro rata between Plaintiff and counsel after each installment payment is received.  This is comprised of $2,500.00 in attorneys' fees, which is one-quarter of the settlement, and $1,502.65 in out-of-pocket litigation expenses.  As for attorneys' fees, Plaintiff's counsel clearly billed substantially more than this amount, so no lodestar analysis is required.  Additionally, with respect to expenses, the Firm is seeking reimbursement for $1,502.65, comprised mainly of the filing fee, service of the Complaint, translation services for the FLSA notices sent, Westlaw usage, and postage.  Given the amount of these expenses in relation to the total settlement, Plaintiff's counsel is not seeking their customary one-third fee.  Plaintiff's counsel's expense statement is annexed hereto as **Exhibit B**.

**IV.**    **CONCLUSION**

In light of the foregoing, the Parties respectfully request that the Court approve their FLSA settlement and dismiss this matter with prejudice, while retaining jurisdiction for the sole purpose of enforcing the Parties' agreement and entering judgment in the event of a breach in accordance with the agreement's terms should that become necessary.

Respectfully submitted,

_____
Jeffrey R. Maguire, Esq.
*For the Firm*

C:  All Counsel of Record *via* ECF